# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ONWARD SEARCH LLC,
  *Plaintiff,*

  v.                                          No. 3:22-cv-00369 (VAB)

J. DOUGLAS NOBLE,
  *Defendant.*

## RULING AND ORDER ON MOTION TO DISMISS AND MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

Onward Search LLC ("Onward" or "Plaintiff") has sued J. Douglas Noble ("Defendant"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair competition arising from Mr. Noble's alleged breach of the non-compete, non-solicitation, and non-disclosure provisions of his employment contract with Onward. Compl., ECF No. 1 (Mar. 9, 2022) ("Compl.").

Pending before the Court are Onward's motion for a temporary restraining order, preliminary injunction, and expedited discovery, *see* Mot. for TRO, Prelim. Inj., and Expedited Disc., ECF No. 3 (Mar. 9, 2022), and Mr. Noble's motion to dismiss for lack of jurisdiction and failure to state a claim, *see* Def. J. Douglas Noble's Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 12 (Mar. 14, 2022).

For the following reasons, Onward's motion for a temporary restraining order and preliminary injunction is **DENIED**, and motion for expedited discovery is **DENIED as moot**.

Mr. Noble's motion to dismiss for lack of personal jurisdiction and failure to state a claim is **GRANTED in part** and **DENIED in part**. The implied covenant of good faith and fair

1

dealing claim will be dismissed, without prejudice to seeking leave to amend the operative

Complaint, but all other claims will remain.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On April 8, 2022 and April 20, 2022, the Court heard evidence relating to Onward's

motion for a temporary restraining order and preliminary injunction.[1] Min. Entry, ECF No. 47

(Apr. 8, 2022); Min. Entry, ECF No. 59 (Apr. 20, 2022). During the hearings, forty-six exhibits

were entered into evidence, *see* Joint Ex. and Witness List, ECF No. 48 (Apr. 8, 2022); Ex. and

Witness List, ECF No. 68 (Apr. 20, 2022), and three witnesses testified: Ken Clark, Chief

Executive Officer of Talivity, Inc.; Eliana Hassen, Chief Executive Officer ("CEO") of Onward

Search LLC; and Mr. Noble, *see* Joint Witness List, ECF No. 42 (Apr. 7, 2022).

Based on the information gathered during the evidentiary hearings and the parties'

written submissions, including their post-hearing submissions, the Court finds the following:

### 1.  Onward Search LLC

Onward is a national firm that "specializes in the recruitment and placement of digital,

creative, and marketing professionals in permanent and temporary assignments with employers

across all industries[.]" Compl. ¶¶ 1, 22; Tr. of Mot. Hr'g at 12:5–13:9, ECF No. 50 (Apr. 15,

---

[1] On April 18, 2022, the Court held a discovery conference regarding expedited discovery, during which the Court ordered Mr. Noble to produce to Onward the following documents: (1) Mr. Noble's offer letter from Beacon Hill Staffing ("Beacon Hill"); (2) all agreements between Mr. Noble and Beacon Hill; and (3) all documents that concern any communications between Mr. Noble and Leanne Owens during the three-month period before Mr. Noble's departure from Onward. *See* Min. Entry, ECF No. 55 (Apr. 18, 2022). During the April 20, 2022 evidentiary hearing, the Court denied Onward's motion to admit into evidence Mr. Noble's Beacon Hill offer letter and employment agreement with Beacon Hill as unduly prejudicial under Federal Rule of Evidence 403. Tr. of Mot. Hr'g Vol. II at 341:20–352:3, ECF No. 63 (Apr. 24, 2022). In its post-hearing submission, Onward again moves to admit these documents into evidence on the grounds that they are relevant to the Court's preliminary injunction analysis. Pl's Resp. to Def.'s Post-Hearing Submission in Supp. of His Opp'n to Onward's Mot. for Injunctive Relief at 19–22, ECF No. 69 (May 13, 2022). For the reasons described in the April 20, 2022 hearing, and as the Court does not, and need not, consider the Beacon Hill offer letter and employment agreement in its analysis of Onward's preliminary injunction motion, Onward's motion to admit these documents into evidence is **DENIED**.

2022) ("Tr. of Apr. 8, 2022 Hr'g"). Onward's customers, or clients, are businesses and employees within these industries "who recruit and retain candidates for open positions." Compl. ¶ 23.

To conduct its business, Onward allegedly "relies upon confidential and trade secret information," which Onward defines as:

> its candidate and customer contact information, customer needs and preferences, candidate skill profiles, pricing models, cost structures, terms of commercial agreements with customers, current and prospective business plans, information about its current and prospective lines of business, talent or individuals placed at Onward's customers, and targeted customers, industries and markets.

*Id.* ¶ 26; Tr. of Apr. 8, 2022 Hr'g at 149:23–151:2.

Onward "stores its confidential information and trade secrets in an internal database called Bullhorn with limited access for its employees." Compl. ¶ 37; Tr. of Apr. 8, 2022 Hr'g at 151:4–14, 152:4–23. Only Onward employees, each of whom has a "unique login credential[]," have access to Bullhorn. Compl. ¶ 37; Tr. of Apr. 8, 2022 Hr'g at 152:4–23 (describing employee access permissions as "based on roles and geography").

At the start of the COVID-19 pandemic, Onward closed its Boston office. Compl. ¶ 52; Tr. of Apr. 8, 2022 Hr'g at 50:23–51:4. The only office Onward currently maintains is its corporate headquarters in Wilton, Connecticut. Tr. of Apr. 8, 2022 Hr'g at 53:12–14.

### 2.  J. Douglas Noble

On June 18, 2008, Onward hired Mr. Noble as a Recruiter in its Wilton, Connecticut office. *Id.* at 18:4–13; Ex. 1, ECF No. 44-1 (Apr. 7, 2022) ("Employment Agreement"). As a Recruiter, Mr. Noble managed a set of Onward client accounts and addressed staffing and

recruiting needs for clients located in the northeastern United States. Tr. of Apr. 8, 2022 Hr'g at 18:14–23; Compl. ¶ 41.

Upon his hiring in 2008, Mr. Noble signed an Employment Agreement with Onward that contained non-disclosure, non-competition, and non-solicitation provisions. Employment Agreement; Tr. of Apr. 8, 2022 Hr'g at 18:24–19:1. The Employment Agreement provides:

> Disclosure of Information: You agree, during the term of this Agreement and at all times thereafter, to treat as confidential and, except as required in the performance of your duties under this Agreement, not to disclose, publish or otherwise make use of for yourself or for any other person, business, corporation or other entity or make available to the public, any trade secrets or other confidential information concerning the business, employees, clients, methods, operations, financing or services of the Company or any of its affiliates. . . .
>
> Covenant Not to Compete: [ ] You agree that you will not during the term hereof and for a period of one (1) year after termination of your employment, regardless of the cause of termination, in Wilton, CT or any other affiliated company office within a radius of sixty (60) miles from any such office engage in any business or perform any service, directly or indirectly, in competition with the business of the Company or any of its affiliates . . . .
>
> In furtherance of the foregoing, and not in limitation thereof, you agree that you will not during the period of non-competition and within the geographical area herein set forth, directly or indirectly: [ ] solicit or service in any way, on behalf of yourself or on behalf of or in conjunction with others, any client, customer or employee, or prospective client, customer or employee, which has been solicited, serviced or engaged by the Company or any of its affiliates within twelve (12) months prior to the termination of this employment . . . [or] . . . induce or attempt to induce any employee of or consultant to Company to leave the employ of Company . . . .

Employment Agreement at 1–2 ¶¶ 4, 6.

On or about 2009, Mr. Noble moved to Boston, Massachusetts and continued working for Onward, first from Onward's Woburn, Massachusetts office, and then from Onward's Boston

office. Tr. of Mot. Hr'g Vol. II at 269:9–270:3, ECF No. 63 (Apr. 24, 2022) ("Tr. of Apr. 20, 2022 Hr'g").

On July 23, 2014, Onward promoted Mr. Noble to Senior Account Executive. Tr. of Apr. 8, 2022 Hr'g at 27:14–28:1. Mr. Noble subsequently was promoted to Regional Vice President of Operations on January 14, 2016, *id*. at 29:9–22, and Vice President of Client Services, Strategic Accounts, on July 20, 2020, *id*. at 36:4–22.

Following his promotion in 2016, Mr. Noble became a member of Onward's executive team. *Id*. at 31:19–32:10; Compl. ¶ 45. The executive team meets weekly or bi-weekly with the Onward President and/or CEO and "has responsibility for directing [Onward's] operations, culture, policy, and strategy." Compl. ¶ 46. During these meetings, Mr. Noble was party to information regarding Onward's business strategies and methodologies and "specific client relationships." Tr. of Apr. 8, 2022 Hr'g at 86:20–87:6.

Upon each promotion, Mr. Noble signed a letter which specified that it constituted an "addendum" to his "employment offer and confidentiality and non-compete agreement" with Onward. *See* Ex. 4, ECF No. 44-4 (Apr. 7, 2022) (role and compensation adjustment letter dated July 23, 2014); Ex. 6, ECF No. 44-6 (Apr. 7, 2022) (role and compensation adjustment letter dated January 14, 2016); Ex. 7, ECF No. 44-7 (Apr. 7, 2022) (bonus adjustment letter dated August 19, 2016); Ex. 9, ECF No. 44-9 (Apr. 7, 2022) (title, bonus, and direct reports letter dated July 20, 2020). Each of the addenda further stated that "[f]or all matters unrelated to the modification as stated herein, your employment offer and confidentiality and non-compete agreement shall continue to remain in full force and effect and shall govern any and all such matters."[2] *Id*.

---

[2] Mr. Noble also signed addenda relating to his compensation and bonus opportunities, and which included identical language to that described above, at various points from 2014 to 2022. *See* Ex. B to Aff. of Eliana Hassen, ECF No.

In his roles as Vice President of Client Relations and Vice President of Client Services, Strategic Accounts, Mr. Noble managed client accounts in the northeastern United States to fulfill staffing needs and fill open positions in UX/UI, Design/Art Direction, Product Design, Project Management, Copy/Content, Front End Development, Mobile/Web Development, and Marketing. Compl. ¶ 49. As Vice President of Client Services, Mr. Noble also managed a team of twelve employees consisting of Account Executives and Recruiters. *Id.* ¶ 51.

After Onward closed its Boston office at the start of the COVID-19 pandemic in the United States in March 2020, Mr. Noble continued to work remotely for Onward from his home in Plymouth, Massachusetts. *Id.* ¶ 52; Tr. of Apr. 20, 2022 Hr'g at 270:2–12.

### 3. Mr. Noble's Resignation from Onward

On February 7, 2022, Mr. Noble resigned from Onward and, on February 15, 2022, began working remotely for a competitor, Beacon Hill Staffing ("Beacon Hill"), as a Senior Recruiter from his home in Plymouth, Massachusetts. Tr. of Apr. 20, 2022 Hr'g at 284:23–285:3, 287:9–13; Compl. ¶ 62. Beacon Hill provides recruitment, staffing, and talent services in the digital, creative, and marketing industries. Compl. ¶ 65. As a Recruiter at Beacon Hill, Mr. Noble's responsibilities "are to source and recruit candidates for our open job orders and submit them to our business development managers internally for presentation to our clients." Tr. of Apr. 20, 2022 Hr'g at 287:14–20. Mr. Noble also helps place candidates in UX, product design, web design, web development, marketing, and other digital and creative roles. *Id.* at 365:7–25.

---

5-2 (Mar. 9, 2022) (compensation adjustment letter dated May 8, 2014); Ex. D to Aff. of Eliana Hassen, ECF No. 5-4 (Mar. 9, 2022) (compensation adjustment letter dated January 27, 2015); Ex. G to Aff. of Eliana Hassen, ECF No. 5-7 (Mar. 9, 2022) (compensation adjustment letter dated March 1, 2019); Ex. I to Aff. of Eliana Hassen, ECF No. 5-9 (Mar. 9, 2022) (bonus opportunity letter dated April 22, 2021); Ex. J. to Aff. of Eliana Hassen, ECF No. 5-10 (Mar. 9, 2022) (bonus letter dated August 19, 2021).

Following Mr. Noble's resignation, Ms. Hassen and Mr. Clark attempted to contact Mr. Noble by phone and text message. Tr. of Apr. 8, 2022 Hr'g at 66:22–67:9, 178:22–179:15. Onward's human resources department also requested an exit interview from Mr. Noble. *Id*. at 67:2–4. Mr. Noble did not respond to Ms. Hassen's and Mr. Clark's messages, and declined to participate in an exit interview. *Id*. at 67:1–9, 178:22–179:7. Mr. Noble testified that following his departure from Onward, he no longer had access to his Onward e-mail or the company's internal database, and that several of his phone contacts, including that of Mr. Clark, were wiped from his phone. Tr. of Apr. 20, 2022 Hr'g at 286:18–287:2.

On February 18, 2022, Leanne Owens, former Senior Vice President at Onward and a current Director at Beacon Hill, sent an e-mail to Mr. Noble's Onward e-mail address, in which she forwarded a note from a Beacon Hill client and asked Mr. Noble to identify candidates for a UI/UX position for the client. Ex. 13, ECF No. 44-13 (Apr. 7, 2022). The same day, Ms. Owens sent Mr. Noble a second message to his Onward e-mail address that referred to a client Onward also services. Ex. 14, ECF No. 44-14 (Apr. 7, 2022).

On March 9, 2022, Ms. Owens again forwarded an e-mail to Mr. Noble's Onward e-mail address regarding a potential candidate for CVS, an Onward client. Ex. 17, ECF No. 45-2 (Apr. 7, 2022). The same candidate's resume is also in Onward's internal database. Tr. of Apr. 8, 2022 Hr'g at 173:22–24. While employed at Onward, Mr. Noble had worked with candidates to place them at CVS. Tr. of Apr. 20, 2022 Hr'g at 325:4–19.

At the time Mr. Noble contacted the candidate to which Ms. Owens referred in her March 9, 2022 e-mail, he was not aware that this individual was in Onward's internal database. *Id*. at 309:23–310:7. Mr. Noble testified that he discovered the candidate through LinkedIn in early 2022, after he joined Beacon Hill. *Id*. at 304:19–21.

Following the initiation of this case, Onward was informed by one of its business development managers that Mr. Noble had contacted another one of Onward's candidates for employment. Tr. of Apr. 8, 2022 Hr'g at 174:10–25. According to Mr. Noble, the candidate applied to one of Beacon Hill's job postings in early April 2022. Tr. of Apr. 20, 2022 Hr'g at 310:23–311:21. Mr. Noble testified that he did not use any Onward information to find the candidate, and that he was not aware at the time that the candidate's resume was in Onward's database. *Id.*

### B. Procedural Background

On March 9, 2022, Onward filed a Complaint. Compl.

On the same day, Onward filed a motion for a temporary restraining order, preliminary injunction, and expedited discovery. Mot. for TRO, Prelim. Inj., and Expedited Disc., ECF No. 3 (Mar. 9, 2022); Mem. of Law in Supp. of Onward Search LLC's Mot. for TRO, Prelim. Inj., and Expedited Disc., ECF No. 4 (Mar. 9, 2022) ("Mot. for TRO and Prelim. Inj.").

On March 14, 2022, Mr. Noble moved to dismiss for lack of personal jurisdiction and failure to state a claim. Def. J. Douglas Noble's Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 12 (Mar. 14, 2022); Def. J. Douglas Noble's Mem. of Law in Supp. of His Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 13 (Mar. 14, 2022) ("Mot. to Dismiss").

On March 21, 2022, the Court held an initial scheduling conference with the parties and subsequently ordered the parties to file responses to the pending motions by March 25, 2022, with replies due by March 30, 2022. Min. Entry, ECF No. 26 (Mar. 21, 2022).

On March 25, 2022, Onward filed a response to Mr. Noble's motion to dismiss. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 31 (Mar. 25, 2022) ("Opp'n to Mot. to Dismiss").

On the same day, Mr. Noble filed his opposition to Onward's motion for a temporary restraining order, preliminary injunction, and expedited discovery. Def. J. Douglas Noble's Opp'n to Pl. Onward Search LLC's Mot. for TRO, Prelim. Inj., and Expedited Disc., ECF No. 33 (Mar. 25, 2022) ("Opp'n to Mot. for TRO and Prelim. Inj.").

On March 30, 2022, Onward filed a reply in support of its motion for a temporary restraining order, preliminary injunction, and expedited discovery. Pl.'s Reply in Supp. of Its Mot. for TRO, Prelim. Inj., and Expedited Disc., ECF No. 36 (Mar. 30, 2022) ("Pl. Reply").

The same day, Mr. Noble filed a reply in support of his motion to dismiss. Def. J. Douglas Noble's Reply in Supp. of His Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, ECF No. 35 (Mar. 30, 2022) ("Def. Reply").

On April 8, 2022, the Court held an evidentiary hearing on the pending motion to dismiss and motion for a temporary restraining order, preliminary injunction, and expedited discovery. Min. Entry, ECF No. 47 (Apr. 8, 2022).

On April 18, 2022, the Court held a discovery conference regarding Onward's request for expedited discovery. Min. Entry, ECF No. 55 (Apr. 18, 2022). Following that hearing, the Court ordered Mr. Noble to produce to Onward the following documents: (1) Mr. Noble's offer letter from Beacon Hill; (2) all agreements between Mr. Noble and Beacon Hill; and (3) all documents that concern any communications between Mr. Noble and Ms. Owens during the three-month period before Mr. Noble's departure from Onward. *Id.*

On April 20, 2022, the Court held a further evidentiary regarding the pending motions. Min. Entry, ECF No. 59 (Apr. 20, 2022).

On April 24, 2022, Mr. Noble moved for leave to file a post-hearing summary of the evidence. Def. J. Douglas Noble's Mot. for Leave to File Post-Hearing Summ. of the Evid., ECF No. 60 (Apr. 22, 2022); *see also* Def. J. Douglas Noble's Post-Hearing Submission in Supp. of His Opp'n to Onward's Mot. for Injunctive Relief, ECF No. 62 (Apr. 24, 2022) ("Def. Post-Hr'g Submission"). The Court granted the motion the following day. Order, ECF No. 61 (Apr. 23, 2022).

On April 25, 2022, Onward moved for reconsideration of the Court's order granting Mr. Noble leave to file his post-hearing submission. Pl.'s Mot. for Recons. and Opp'n to Def.'s Mot. for Leave of Court to File Post-Hearing Summ. of the Evid., ECF No. 64 (Apr. 25, 2022). The Court denied the motion in the following order:

> Onward Search's motion for reconsideration is DENIED. The Court grants Onward Search leave to file any response to Mr. Noble's filing, ECF No. 62, by May 13, 2022 (a deadline which can be further extended, if Onward Search needs additional time), but reserves judgment on whether leave should be granted regarding the necessity of referring to the Beacon Hill Employment Agreement and offer letter to Mr. Noble, marked for identification as Exhibits 57 and 58, respectively, until such filing is made and a more specific showing in context is provided. The Court's earlier ruling, ECF No. 61, including that Mr. Noble will not be permitted to file a reply brief to any response filed by Onward Search, remains in effect.

Order, ECF No. 65 (Apr. 26, 2022).

On April 29, 2022, Mr. Noble moved for reconsideration of the Court's orders denying Onward's motion for reconsideration and prohibiting Onward from filing a reply brief in support of its post-hearing submission, to the extent that the orders permitted Onward to introduce evidence relating to the Beacon Hill Employment Agreement and offer letter to Mr. Noble. Def.

J. Douglas Noble's Mot. for Recons. of Court's Orders [ECF Nos. 61, 65], ECF No. 66 (Apr. 29, 2022).

The Court denied Mr. Noble's motion for reconsideration on May 2, 2022. Order, ECF No. 67 (May 2, 2022).

On May 13, 2022 Onward filed its response to Mr. Noble's post-hearing submission. Pl's Resp. to Def.'s Post-Hearing Submission in Supp. of His Opp'n to Onward's Mot. for Injunctive Relief, ECF No. 69 (May 13, 2022) ("Pl. Post-Hr'g Submission").

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In deciding a motion to dismiss for lack of personal jurisdiction, a district court has discretion to proceed on written submissions or conduct an evidentiary hearing. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam).

Where the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))).

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci*, 673 F.3d at 59 (internal citation and quotation marks omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-CV-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (summary order), *as amended* (Sept. 23, 2011). A court considers the facts as they existed when the plaintiff filed the complaint. *See id*. (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### B.  Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

12

the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555,

570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual

allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation

of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless

distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and

unlikely." *Id.* at 556 (internal quotation marks omitted).

### C.  Temporary Restraining Order and Preliminary Injunction

Courts in this Circuit apply the same standard to motions for temporary restraining order

and preliminary injunctions. *Local 1814, Int'l Longshoremen's Ass'n AFL-CIO v. New York

Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Interim injunctive relief "is an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Grand River Enter. Six Nations Ltd. v. Pryor*, 481

F.3d 60, 66 (2d Cir. 2007) (internal citation and quotation marks omitted). To prevail, the

plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876

(2015) (internal citation and quotation mark omitted).

"The district court has wide discretion in determining whether to grant a preliminary

injunction." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "[T]he

court's task when granting a preliminary injunction is generally to restore, and preserve, the

status quo ante, *i.e.*, the situation that existed between the parties immediately prior to the events

that precipitated the dispute." *Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y.

2010); *see also Transamerica Rental Fin. Corp. v. Rental Experts*, 790 F. Supp. 378, 381 (D.

Conn. 1992) ("It is well established in this Circuit that the purpose of a preliminary injunction is

to preserve the status quo between two parties." (emphasis omitted)).

"Because mandatory injunctions disrupt the status quo, a party seeking one must meet a

heightened legal standard by showing 'a clear or substantial likelihood of success on the

merits.'" *N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir.

2018) (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir.

2012)). "A mandatory preliminary injunction 'should issue only upon a clear showing that the

moving party is entitled to the relief requested, or where extreme or very serious damage will

result from the denial of preliminary relief.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d

Cir. 2001) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,

598 F.3d 30, 35 n.4 (2d Cir. 2010)).

## III.    DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Parties may "consent to personal jurisdiction through forum-selection clauses in

contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)

(citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964)). If an agreement

contains a valid and enforceable forum selection clause, "it is not necessary to analyze

jurisdiction under the state long-arm statutes or federal constitutional due process." *Bricken v.*

*Bergtholdt*, No. 11-CV-1992 (WWE), 2012 WL 2958217, at *1 (D. Conn. July 19, 2012).

To determine whether a forum selection clause is presumptively enforceable, courts examine three factors: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

If the clause was reasonably communicated to the party resisting enforcement, has mandatory force, and covers the claims and parties involved in the suit, the clause is presumptively enforceable. *Id*. at 217 (quoting *Phillips*, 494 F.3d at 383). A court must then consider "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Phillips*, 494 F.3d at 383–84 (internal citation and quotation marks omitted); *see also Gottdiener*, 462 F.3d at 103 ("[U]nless it is clearly shown that 'enforcement would be unreasonable or unjust,' forum-selection clauses will be enforced." (internal citation omitted)); *Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 244 (D. Conn. 2001) ("Forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972))).

Mr. Noble argues that under Connecticut choice-of-law rules, Massachusetts law applies to Onward's breach of contract claims because "[Mr.] Noble lives in Massachusetts, his work for the past 12 years under the [Employment] Agreement occurred exclusively in Massachusetts and for years touched only non-Connecticut candidates and clients, and Onward's claims arise solely from [Mr.] Noble's conduct in Massachusetts." Mot. to Dismiss at 6. In addition, Mr. Noble

16

argues, application of Connecticut law would be contrary to a "fundamental policy" of Massachusetts, which disfavors non-competes and has a "materially greater interest" in the dispute. *Id*. (internal citations and quotation marks omitted). Mr. Noble points in particular to the Massachusetts Noncompetition Agreement Act ("Massachusetts Non-compete Act"), Mass. Gen. Laws Ch. 149 § 24L, which governs Massachusetts non-compete agreements entered into after October 1, 2018. Mot. to Dismiss at 8. He argues that his non-compete agreement is subject to the Massachusetts Non-compete Act, as his renewals to the Employment Agreement constitute non-compete agreements entered into after October 1, 2018. *Id*.

In the alternative, Mr. Noble argues that even if Massachusetts law does not govern Onward's claims, the Employment Agreement's forum selection clause is "unreasonable" and therefore unenforceable. *Id*. at 9. According to Mr. Noble, Onward required him to sign the Employment Agreement "as a condition of his hiring and without any room for negotiation or opportunity to consult with counsel." *Id.*

Onward responds that the Court "need not undertake a personal jurisdiction analysis" because "there is a valid and enforceable forum selection clause mandating that this suit be heard in Connecticut." Opp'n to Mot. to Dismiss at 8. In Onward's view, Mr. Noble had "plenty of opportunity to review and consider the Employment Agreement's terms," and he acknowledged in the Employment Agreement that the parties "discussed the Agreement's terms and that they were 'negotiated.'" *Id*. at 10. Indeed, Onward argues, Mr. Noble continued to "benefit[]" from the Employment Agreement by "obtaining successful employment" with Onward for fourteen years. *Id*. at 11.

Onward further contends that Mr. Noble fails to identify a "Connecticut public policy that would be offended by bringing this lawsuit in Connecticut." *Id*. The fact that a trial may be more

difficult in Connecticut, Onward argues, does not rebut the presumption of enforceability of the forum selection clause. *Id*. (internal quotation marks and citation omitted).

As to the appropriate choice of law, Onward argues that the Employment Agreement's choice-of-law provision, which requires the application of Connecticut law, "must be given due regard" absent a showing that the provision is part of an adhesion contract or the product of fraud, duress, coercion, or mistake. *Id*. at 11–12 (internal citation and quotation marks omitted). Because, Onward argues, Mr. Noble "does not argue that he was cajoled into signing the Employment Agreement or that any of its terms resulted from fraud, duress, coercion, or mistake," Connecticut law applies to the claims in the Complaint. *Id*. at 12.

The Court agrees.

"If [a] forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips*, 494 F.3d at 383. Such clauses are to be "given full effect" absent "fraud, undue influence, or overweening bargaining power." *Bremen*, 407 U.S. at 12–13. The party resisting a forum selection clause "must overcome a substantial presumption in favor of enforcement." *Indymac Mortg. Holdings*, 167 F. Supp. 2d at 244 (internal citation and quotation marks omitted).

The Employment Agreement provides:

> This offer of employment has been negotiated and executed in the State of Connecticut. The laws of the State of Connecticut hereunder shall govern the construction, validity, interpretation and enforcement, notwithstanding any application of choice of law principles, of any term(s) or provision(s) of this offer of employment or any subsequent employment or the rights and duties of the parties. Each of the parties agrees to submit to the jurisdiction of the courts of the State of Connecticut and venue for all actions arising out of this offer of employment or any subsequent employment shall be set in Fairfield County, Connecticut.

Employment Agreement at 3 ¶ 9.

On the record before the Court, the forum selection clause was reasonably communicated to Mr. Noble. Over the course of nearly fourteen years, Mr. Noble signed the Employment Agreement and at least ten subsequent letters regarding the adjustment of his role or compensation. Each subsequent letter specified that it constituted an "addendum" to Mr. Noble's "employment offer and confidentiality and non-compete agreement." *See, e.g.*, Ex. 3, ECF No. 44-3 (Apr. 7, 2022) (compensation adjustment letter dated May 8, 2014). The addenda further stated that, "[f]or all matters unrelated to the modification as stated herein, your employment offer and confidentiality and non-compete agreement shall continue to remain in full force and effect and shall govern any and all such matters." *See, e.g.*, *id*.

Mr. Noble has not indicated that upon signing the addenda, he attempted to negotiate or alter the terms of the Employment Agreement's forum selection clause. As there is no dispute that the forum selection clause has mandatory force or that it applies to the parties and claims at issue here (apart from Mr. Noble's assertions with respect to choice of law, discussed below), the Employment Agreement's forum selection clause requiring the parties to submit to the jurisdiction of the courts of Connecticut is presumptively enforceable. *See Doctor's Assocs., Inc. v. Inder Pahwa & Satinder Pahwa*, No. 3:16-CV-00446 (JCH), 2016 WL 7635748, at *11 (D. Conn. Nov. 3, 2016) (forum selection clause was "reasonably communicated" to the defendants when, "[o]ver the course of a nearly twenty-year relationship, defendants signed at least five franchise agreements with [the plaintiff] that contained a forum selection clause requiring that arbitration be held in Bridgeport, Connecticut").

Mr. Noble also has not overcome the "substantial presumption" in favor of enforcement of the forum selection clause. *Indymac Mortg. Holdings*, 167 F. Supp. 2d at 244. Under *Bremen*, a forum selection clause is "unreasonable" only if (1) "[its] incorporation into the agreement was

the result of fraud or overreaching"; (2) "the complaining party 'will for all practical purposes be deprived of his day in court[]' due to grave inconvenience or unfairness of the selected forum"; (3) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy"; or (4) "the clause[] contravene[s] a strong public policy of the forum state." *Vertucci v. Orvis*, No. 3:05-CV-1307 (PCD), 2006 WL 1688078, at *7 n.3 (D. Conn. May 30, 2006) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing *Bremen*, 407 U.S. at 18)).

There is no evidence that the forum selection clause is the product of fraud or overreaching; Onward is headquartered in Connecticut and at the time Mr. Noble signed the Employment Agreement, he was an employee in Onward's Wilton, Connecticut office. *See* Ex. A to Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim ¶¶ 10, 13–14, ECF No. 31-1 (Mar. 25, 2022) ("Second Hassen Aff.").

To the extent Mr. Noble argues that the clause resulted from the parties' disproportionate bargaining power or is unfair, "[t]he Second Circuit has construed *Bremen's* 'unreasonable' exception narrowly and has not hesitated to enforce forum selection clauses, even in contracts of adhesion and even when doing so would result in inconvenience for the nonmoving party." *Vertucci*, 2006 WL 1688078, at *7; *see also New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir. 1997) ("The party claiming unreasonableness of a forum selection clause bears a heavy burden; in order to escape the contractual clause, he must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" (citing *M/S Bremen*, 407 U.S. at 18)); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (enforcing forum selection clause stating that all suits against the carrier must be brought in Greece, where the language was "clear and unambiguous," "albeit in fine print," and "the existence of the forum-selection clause was

reasonably communicated to the plaintiff"). Mr. Noble does not argue that he will be deprived of his day in court or that the clause contravenes Connecticut public policy. Thus, Mr. Noble has failed to meet his burden of showing that "this case provides the 'exceptional' circumstances in which the forum selection clause should not be enforced." *Vertucci*, 2006 WL 1688078, at *7 (citation omitted).

Mr. Noble argues in the alternative that Massachusetts law, rather than Connecticut law, governs this case and, therefore, the forum selection clause is unenforceable under the Massachusetts Non-compete Act. But it is federal law, and not the parties' contractual choice of law, that "determine[s] whether an otherwise mandatory and applicable forum clause is enforceable under" the fourth prong of the forum selection clause analysis. *Phillips*, 494 F.3d at 384; *see also Martinez*, 740 F.3d at 217 ("[F]ederal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable under *Bremen*, i.e., step four in our analysis." (emphasis and quotation marks omitted) (citing *Phillips*, 494 F.3d at 384)); *Indymac Mortg. Holdings*, 167 F. Supp. 2d at 243 (relying on federal law in determining whether to enforce forum selection clause).

Even if state law were to apply, "[l]argely for the reasons [that courts] hold parties to their contractual promises to litigate in a specified forum, federal courts give substantial weight to [contractual] choice of law provisions." *Phillips*, 494 F.3d at 384; *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 417 (2d Cir. 1990) ("[A] contractual choice of law clause generally takes precedence over choice of law rules . . . ."). A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Under Connecticut choice-of-law rules, Connecticut courts give effect to the parties' contractual choice of law—in this case,

Connecticut law. *New Falls Corp. v. Lerner*, 579 F. Supp. 2d 282, 286 (D. Conn. 2008) (citing

*Elgar v. Elgar*, 238 Conn. 839, 848 (1996) (noting that Connecticut courts "have given effect to

an express choice of law by the parties to a contract provided that it was made in good faith"),

*aff'd*, 352 F. App'x 596 (2d Cir. 2009) (summary order)).

Mr. Noble argues that Connecticut has no substantial relationship to the parties, and that

the application of Connecticut law would be contrary to a fundamental policy of Massachusetts.

*See Elgar*, 238 Conn. at 850 (outlining exceptions to enforceability of contractual choice-of-law

clause (citing Restatement (Second) of Conflict of Laws § 187 (1971))). But Onward has a

"substantial relationship" to Connecticut, as its principal place of business is located in that state.

*See OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d

490, 512 (D. Conn. 2007) ("OBG is a corporation organized under the laws of New York and,

thus, New York has a substantial relationship to the parties."). And, although the Massachusetts

Non-compete Act could be read to suggest that Massachusetts law disfavors non-compete

agreements, *see* Mass. Gen. Laws Ch. 149 § 24L(b) (specifying minimum requirements for valid

and enforceable non-competition agreement), a court may not "refrain from applying the

[parties'] chosen law merely because this would lead to a different result than would be obtained

under the local law of the state of the otherwise applicable law," Restatement (Second) of

Conflict of Laws § 187 cmt. g.[3]

---

[3] A similar analysis applies with respect to the Restatement's "most significant relationship" test applicable to tort claims. *See* Restatement (Second) of Conflict of Laws § 145. Based on the record before the Court, however, "it would be premature to undertake this analysis at this early stage of the litigation," *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp. 3d 488, 499 (D. Conn. 2018); *see also Bristol-Meyers Squibb Co. v. Matrix Labs, Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) ("Numerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage." (collecting cases)). In any event, the Court need not reach this question to determine the enforceability of the forum selection clause, for the reasons discussed above.

Because the Employment Agreement contains a valid and enforceable forum selection clause, under which the parties have agreed to be subject to the jurisdiction of the courts in Connecticut, "it is not necessary to analyze jurisdiction under the state long-arm statutes or federal constitutional due process." *Bricken*, 2012 WL 2958217, at *1.

Accordingly, the Court will not dismiss the Complaint for lack of personal jurisdiction.

### B.  Motion for Temporary Restraining Order and Preliminary Injunction

In order for the Court to grant a preliminary injunction, the party seeking the injunction must establish (1) a likelihood that it will experience irreparable harm in the absence of interim relief and (2) either (a) a likelihood of success on the merits, or (b) the existence of a sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships that tips decidedly in its favor.[4] *See Fed. Exp. Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000).

"In non-compete cases, such as this one, the irreparable harm analysis and the likelihood of success on the merits analysis are closely related and often conflated." *Int'l Bus. Machines Corp. v. Visentin*, No. 11-CV-399, 2011 WL 672025, at *7 (S.D.N.Y. Feb. 16, 2011). Onward alleges that by joining Beacon Hill following his departure from Onward, Mr. Noble breached the Employment Agreement, breached the implied duty of good faith and fair dealing, and committed acts of unfair competition against Onward. *See* Compl.

The Court will address each of Onward's claims in turn.

---

[4] "The question of whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny." *Vbrick Sys.., Inc. v. Stephens*, No. 08-CV-1979, 2009 WL 1491489, at *5 (D. Conn. May 27, 2009) (internal citations and quotation marks omitted).

### 1. Breach of Contract

When evaluating the reasonableness of covenants not to compete, Connecticut courts look to five factors: "(1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." *Robert S. Weiss & Assocs., Inc. v. Wiederlight*, 208 Conn. 525, 529 n.2 (1988). "The criteria 'are disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable.'" *A.H. Harris & Sons Inc. v. Naso*, 94 F. Supp. 3d 280, 293 (D. Conn. 2015) (quoting *New Haven Tobacco Co. Inc. v. Perrelli*, 18 Conn. App. 531, 559 (1989)).

Onward argues that the Employment Agreement's non-compete clause is "appropriate" given Mr. Noble's "expansive knowledge of and access to Onward's confidential and trade secret information, including lists of clients and prospects, contacts at each client, lists of talent and/or candidates for open positions, open positions, bill and pay rates, sales pipelines, and activity and production metrics[.]" Mot. for TRO and Prelim. Inj. at 7–8.

Onward further contends that it is likely to succeed on the merits of its breach of contract claim because the Employment Agreement "expressly prohibits" Mr. Noble from "working in a role that directly competes with the one he held at Onward," for a period of twelve months, anywhere "within a sixty mile radius of the Onward Boston, Massachusetts office" and Onward's affiliate offices, including Mr. Noble's "remote office in Plymouth Massachusetts, the last office from which he performed services for Onward." *Id*.

In support of its breach of contract claim, Onward points to evidence that a former Onward employee, who now works for Beacon Hill, sent Mr. Noble e-mails to his Onward e-

mail address, including a message "asking [Mr.] Noble and other recipients to identify candidates for a UI/UX position for a Beacon client." *Id.* at 8. In a post-hearing submission, Onward further argues that the company "has been damaged by [Mr.] Noble's conduct because he solicited . . . a candidate he knew or, at the very least as a longtime Onward employee, should have known[,] was in Onward's database for a placement with a significant Onward client, CVS." Pl. Post-Hr'g Submission at 7. Based on this evidence, Onward argues that "[o]nly additional time and discovery will reveal the full effect and damage caused by [Mr.] Noble's breach." *Id.*

In response, Mr. Noble argues that the Employment Agreement's non-compete clause is unenforceable under Connecticut law because it is not necessary to protect a legitimate Onward business interest, it "puts [Mr.] Noble out of work," and it imposes an "unreasonable" geographic restriction. Opp'n to Mot. for TRO and Prelim. Inj. at 20 (emphasis omitted). According to Mr. Noble, Onward "concedes it has no evidence" that Mr. Noble misappropriated its trade secrets or confidential information "and only speculates upon information and belief that [Mr.] Noble may have misappropriated its trade secrets or confidential information and may be using it to compete against Onward." *Id.* at 21 (emphasis omitted). Moreover, Mr. Noble argues, the information Onward seeks to protect is available on LinkedIn and other publicly accessible sites, and on Beacon's databases and internal job posting boards for already-established Beacon company clients. *Id.*

With respect to the non-compete provision's geographic limitations, Mr. Noble argues that the clause is "unreasonable" and "overly broad," both due to its extension to a 60-mile radius from "any other affiliated company office" and because, under Onward's interpretation,

25

"the noncompete bars [Mr.] Noble from working within 60 miles of hundreds of Onward's employee's home offices, covering vast portions of the entire country." *Id.* at 24–26.

In a post-hearing submission, Mr. Noble contends that Onward also has conceded that there is no evidence that Mr. Noble took or is using any information from Onward, including information relating to the two candidates in Onward's database. Def. Post-Hr'g Submission at 6–7.

The Court agrees.

"Ordinarily, under Connecticut law, 'time and geographical restrictions [in employment agreements] are to be reviewed as intertwined considerations,' meaning, for instance, that 'a restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time.'" *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 327 (D. Conn. 2021) (quoting *A.H. Harris & Sons, Inc.*, 94 F. Supp. 3d at 293).

Under the Employment Agreement, Mr. Noble is barred from employment with Onward's competitors, for a period of one year, within sixty miles of Onward's headquarters in Wilton, Connecticut "or any other affiliated company office." Employment Agreement at 2 ¶ 6. One-year employment restrictions are permissible under Connecticut law, which permits non-compete agreements if they are reasonable in geography and scope. *See Tyco Healthcare Grp. LP v. Ross*, No. 3:11-CV-373 (CFD), 2011 WL 1790186, at *3 (D. Conn. May 10, 2011) ("The non-compete agreement . . . meets these criteria for reasonableness. First, the restriction operated for two years. Courts applying Connecticut law have upheld two-year non-compete restrictions as reasonable."); *Minn. Mining & Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 280 (D. Conn. 2002) (holding that two-year restriction was "both reasonable and necessary" to protect

confidential and proprietary information). With respect to the length of the non-compete clause, therefore, a one-year ban from working for a competitor is not *per se* unreasonable.

With respect to the Employment Agreement's geographic restrictions, Connecticut courts have been amenable to restrictive covenants with even a global reach, so long as they are reasonably connected to the employer's business. *See, e.g.*, *Tymetrix, Inc. v. Szymonik*, No. CV 06401942S, 2006 WL 3908558, at *5–6 (Conn. Super. Ct. Dec. 28, 2006) (upholding a two-year national and international non-competition provision extending anywhere the employer sold its product); *see also Tyco Healthcare Grp. LP*, 2011 WL 1790186, at *3 (upholding validity of non-compete agreement that "encompasse[d] 'any geographic area with[in] which any [of the defendant's] job responsibilities for the Company were concerned'").

But while the sixty-mile geographic limitation "may appear reasonably narrow," under the interpretation urged by Onward, the restriction appears to "appl[y] to a wide swath [of locations] around the country by virtue" of Onward's broad definition of "affiliated company office." *Sunbelt Rentals, Inc.*, 552 F. Supp. at 328. Specifically, Onward contends that Mr. Noble's home in Plymouth, Massachusetts, from which he worked remotely for Onward following the closure of Onward's Boston office and before his departure from the company, constitutes an "affiliated company office" under the Employment Agreement's non-compete clause.

This interpretation of the non-compete provision appears to treat any location from which an Onward employee works remotely for the company as an "affiliated company office." *See* Tr. of Apr. 8, 2022 Hr'g at 52:12–15 (testimony by Mr. Clark that Onward did not place any restrictions on where employees could work after the company closed its physical offices). Such an expansive interpretation of the non-compete clause is unlikely to be enforceable. *See Scott v.*

*Gen. Iron & Welding Co.*, 171 Conn. 132, 138 (1976) ("A restrictive covenant which protects the employer in areas in which he does not do business or is unlikely to do business is unreasonable with respect to area."); *Braman Chem. Enters., Inc. v. Barnes*, No. CV 064020633S, 2006 WL 3859222, at *5 (Conn. Super. Ct. Dec. 12, 2006) (finding restrictive covenant unenforceable where "the size of the geographical restriction makes it clear that [the plaintiff] is focusing its attention . . . on excluding all competition from [the defendant] within the very large entire territory in which it conducts much of its business").

Onward's interpretation, moreover, would unduly restrain Mr. Noble's ability to pursue his livelihood. *See Sunbelt Rentals, Inc.*, 552 F. Supp. 3d at 329 (in assessing the enforceability of a restrictive covenant, "the test for reasonableness is not whether the defendant would be able to make a living in other ways, or in other occupations, but whether or not the [a]greement as drafted and applied would unfairly restrain [the defendant's] opportunity to pursue [his] occupation." (internal quotation marks omitted) (quoting *A.H. Harris*, 94 F. Supp. 3d at 298)). Under the Employment Agreement, Mr. Noble is prohibited from working for a competitor, directly or indirectly, in any capacity, within a 60-mile radius of an Onward "affiliated company office," and from soliciting any "prospective" Onward client. Employment Agreement at 2 ¶ 6. Connecticut courts have concluded that similar agreements with no geographic limitation are "overly broad" under the third and fourth factors of the enforcement analysis, as they effectively impose a "blanket prohibition on working with or soliciting current or prospective . . . customers or current employees . . . for no other reason than to prevent the defendant[] from competing with" his employer. *Creative Dimensions, Inc. v. Laberge*, No. CV 116020991, 2012 WL 2548717, at *5 (Conn. Super. Ct. May 31, 2012).

Moreover, and for the same reason, Onward has failed to demonstrate the requisite irreparable harm arising from Mr. Noble's alleged breach. Onward argues that it is entitled to a rebuttable presumption of irreparable harm because the restrictive covenants in the Employment Agreement are "reasonable, and [Mr. Noble] violated those restrictive covenants by accepting employment with Beacon in the same industry and same geographic location where he worked for Onward." Mot. for TRO and Prelim. Inj. at 13. But as discussed above, Onward has not demonstrated at this stage of the proceedings that the Employment Agreement's restrictive covenants are reasonable and therefore enforceable. Thus, the Court will not apply the presumption of irreparable harm here. *See A.H. Harris & Sons, Inc.*, 94 F. Supp. 3d at 300 ("'[I]rreparable harm and lack of adequate remedy at law are rebuttably presumed where a covenant not to compete which has [been] found to impose only a reasonable restraint has been violated.'" (quoting *Fairfield Cnty. Bariatrics & Surgical Assocs., P.C. v. Ehrlich*, No. FBTCV1050291046, 2010 WL 1375397, at *37 (Conn. Super. Ct. Mar. 8, 2010))).

As to the alleged harm, Onward does not allege or present any evidence that Mr. Noble possesses Onward trade secret or confidential information; has shared or otherwise used such information while working for Beacon Hill; or has solicited any of Onward's clients or employees based on information he obtained at Onward. Indeed, at least some of the information to which Onward points does not appear to be confidential, but rather publicly accessible data, such as potential candidates who have posted their resumes on LinkedIn. For example, although Mr. Noble contacted in his role as a Recruiter at Beacon Hill two individuals who also are clients of Onward, Mr. Noble testified that he identified these candidates through LinkedIn or because they applied to a job posting on Beacon Hill's website.

In support of its claim, Onward also refers to three e-mails Leanne Owens, former Senior Vice President at Onward and a current Director at Beacon Hill, sent to Mr. Noble's Onward e-mail address following his departure from the company, in which Ms. Owens refers to a company that is also a client of Onward's. None of the e-mails or additional evidence presented by Onward, however, suggests that Mr. Noble shared confidential information with Beacon Hill or attempted to solicit Onward's clients based on information he obtained while at Onward.

In the absence of such evidence, Onward has failed to establish a likelihood of irreparable harm arising from Mr. Noble's alleged breach of the Employment Agreement. Accordingly, the Court will not grant the motion for a preliminary injunction on this basis. *See Vbrick Sys., Inc.*, 2009 WL 1491489, at *9 (declining to apply presumption and finding no irreparable harm in light of, *inter alia*, the plaintiff's "failure to establish any evidence of significant harm at this stage in the proceedings").

## 2. Implied Covenant of Good Faith and Fair Dealing

All contracts carry "an implied covenant of good faith and fair dealing," which requires both parties to refrain from doing "anything that will injure the right of the other to receive the benefits of the agreement." *Hudson United Bank v. Cinnamon Ridge Corp.*, 81 Conn. App. 557, 576 (2004) (internal quotation marks omitted) (citing *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 564 (1999)). The covenant "presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Neiditz v. Hous. Auth of Hartford.*, 43 Conn. Supp. 283, 294 (Conn. Super. Ct. 1994); *see also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) (same).

Under Connecticut law, a plaintiff asserting a breach of the covenant of good faith and fair dealing "must prove three elements: 'first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive all or some of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith.'" *Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 359–60 (D. Conn. 2014) (quoting *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)).

Bad faith implies "actual or constructive fraud," a "design to mislead or deceive another," or "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 224 Conn. 231, 237 (1992). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.*

Onward argues that by joining Beacon Hill, Mr. Noble "engaged in conduct that injured Onward's rights under the Employment Agreement" and that his "decision to work at Beacon, a direct competitor operated by a former Onward executive, appears deliberate, evidencing bad faith." Mot. for TRO and Prelim. Inj. at 11–12.

In response, Mr. Noble argues that "no enforceable noncompete agreement exists between Onward and [Mr.] Noble, and even if it did, [Mr.] Noble did not breach it." Opp'n to Mot. for TRO and Prelim. Inj. at 28. Moreover, Mr. Noble argues, Onward "does not allege any bad faith on [Mr.] Noble's part" and fails to demonstrate that Mr. Noble "misappropriated any Onward trade secrets or confidential information or has solicited Onward clients to move away

from Onward." *Id*. at 28–29. In Mr. Noble's view, "ordinary competition" does not rise to the

level of bad faith. *Id*. at 29.

The Court agrees, in part.

To the extent the Employment Agreement's non-compete clause is unenforceable or Mr.

Noble did not breach the non-compete agreement, Onward cannot allege a breach of the implied

duty of good faith and fair dealing claim. *See U.S. Bank Nat'l Ass'n v. Eichten*, 184 Conn. App.

727, 762–63 (2018) ("The covenant of good faith and fair dealing presupposes that the terms and

purpose of the contract are agreed upon by the parties and that what is in dispute is a party's

discretionary application or interpretation of a contract term . . . ." (quoting *Landry v. Spitz*, 102

Conn. App. 34, 42 (2007))); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 97 (2d

Cir. 2019) ("The covenant [of good faith and fair dealing] is . . . 'not implicated by conduct that

does not impair contractual rights.'" (quoting *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*,

308 Conn. 760 (2013))).

But even assuming the non-compete clause, as interpreted by Onward, is enforceable,

Onward has not shown that Mr. Noble acted in bad faith. Onward alleges that Mr. Noble's

departure for Beacon "appears deliberate, evidencing bad faith." But the Complaint does not

allege, and the record does not reflect, that Mr. Noble deliberately violated the non-compete

clause, misappropriated Onward trade secrets or confidential information, or solicited Onward

clients on Beacon's behalf. *See Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn.,

Inc.*, 132 Conn. App. 85, 100–01 (2011) (finding no breach of the implied covenant of good faith

and fair dealing where the plaintiff failed to allege that the defendant "committed a fraud, sought

to mislead or deceive the plaintiff, acted with an improper motive, or . . . [acted] with a dishonest

purpose"), *aff'd*, 311 Conn. 123 (2014).

In essence, Onward makes only a "bare assertion that [Mr. Noble] acted in bad faith" in departing Onward for Beacon Hill. *Halkiotis v. WMC Mortg. Corp.*, 144 F. Supp. 3d 341, 359 (D. Conn. 2015). Such assertions are insufficient to establish "a clear or substantial likelihood of success on the merits" as to Onward's implied duty of good faith and fair dealing claim. *N. Am. Soccer League, LLC*, 883 F.3d at 37 (internal citation and quotation marks omitted).

Accordingly, Onward has not established that it is likely to succeed on the merits of its good faith and fair dealing claim, and its motion for a temporary restraining order or a preliminary injunction cannot be granted on that basis.

### 3. Unfair Competition

"The common law action of unfair competition is a general tort covering many activities that may be harmful to commercial interests." *Typehouse, Inc. v. Corbett*, No. CV 000436981S, 2001 WL 273186, at *2 (Conn. Super. Ct. Mar. 1, 2001). While "[a]n agent has no duty to abstain from competition with his principal after termination of the agency," he is obligated "not to use on his own account, in competition with the principal or to the latter's injury, trade secrets revealed to him in confidence or surreptitiously discovered by the agent." *Holiday Food Co. v. Munroe*, 37 Conn. Supp. 546, 550 (1981).

Onward argues that Mr. Noble's "employment with a direct competitor and his current or future disclosure of Onward's confidential and trade secret information to Beacon [Hill] . . . constitutes unfair competition." Mot. for TRO and Prelim. Inj. at 12.

In response, Mr. Noble argues that, to the extent Onward's breach of contract claim fails, its unfair competition claim must fail as well. Opp'n to Mot. for TRO and Prelim. Inj. at 29.

The Court agrees.

As discussed above, Onward has not shown that Mr. Noble disclosed confidential or trade secret information that he obtained from Onward to Beacon Hill. Accordingly, Onward has not established that it is likely to succeed on the merits of its unfair competition claim, and Onward's motion for a temporary restraining order or preliminary injunction will be denied.

### C.  Motion to Dismiss for Failure to State a Claim

In addition to his motion to dismiss for lack of personal jurisdiction, Mr. Noble moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). *See* Mot. to Dismiss at 17–29.

Mr. Noble argues that the Employment Agreement's non-compete clause is unenforceable because it is "not necessary to protect a legitimate Onward business interest," and "effectively prohibits [him] from working in any capacity for a staffing company." *Id*. at 22. He further argues that he did not breach the restrictive covenant because his home in Plymouth, Massachusetts is not an "affiliated company office" under the Employment Agreement. *Id*. at 24. Onward's interpretation of "affiliated company office," Mr. Noble argues, would be contrary to the parties' intent, fail to satisfy the requisite "meeting of the minds," and "offend[] common sense and sound public policy." *Id*. at 25–26.

In addition, Mr. Noble argues that as "no enforceable noncompete agreement exists between Onward and [Mr.] Noble, . . . no implied covenant of good faith and fair dealing exists" between the parties as well. *Id*. at 27. As in his opposition to Onward's motion for a temporary restraining order and preliminary injunction, he argues that the Complaint fails to allege "any bad faith on [Mr.] Noble's part" and instead "accuses [him] of simply competing with [Onward]," which is insufficient to rise to the level of bad faith. *Id*.

Finally, Mr. Noble argues, as above, that to the extent Onward's breach of contract claim must be dismissed, its unfair competition claim must fail as well. *Id.* at 28. He contends that, in any event, the alleged breach of the non-compete clause "does not constitute 'unfair' competition" and is barred by the economic loss doctrine. *Id.* at 28–29.

In response, Onward argues that the non-compete clause is enforceable, largely for the reasons discussed in the context of its motion for a temporary restraining order and preliminary injunction. Opp'n to Mot. to Dismiss at 27–29. In Onward's view, "[g]iven [Mr.] Noble's expansive knowledge of, and access to, Onward's confidential and trade secret information, including lists of clients and prospects, contacts at each client, lists of talent and/or candidates for open positions, open positions, bill and pay rates, sales pipelines, and activity and production metrics, such a restrictive covenant is reasonable." *Id.* at 29.

Onward further argues that it has sufficiently alleged bad faith, as the Complaint "outlines [Mr.] Noble's injurious conduct, including [Mr.] Noble's use of Onward's client information in discussions with [Ms.] Owens or other Beacon employees." *Id.* at 31.

As to its unfair competition claim, Onward argues that "Connecticut courts have expressly held that where defendants acquired the plaintiff's confidential customer list and confidential business information and used it for their own benefit to the detriment of the plaintiff, a valid claim for common law unfair competition was plead." *Id.* at 31–32. In Onward's view, Mr. Noble "engaged in 'unfair' conduct by accepting employment with Beacon [Hill] and presumably using Onward's confidential information just days after his employment ended." *Id.* at 32.

The Court agrees with Mr. Noble, in part.

For the reasons discussed above, Onward's claims, under the interpretation of the Employment Agreement advanced by Onward, are unlikely to succeed on the merits. But absent evidence as to the factual predicate for Onward's breach of contract claim, and viewing the allegations in the light most favorable to Onward, as the Court must on a Rule 12(b)(6) motion, *see Cohen*, 711 F.3d at 359, the Court cannot at this stage of the proceedings determine the scope and enforceability of the Employment Agreement's non-compete clause, *cf. Advance 2000, Inc. v. Harwick*, No. 16-CV-1037S, 2019 WL 6725977, *5–6 (W.D.N.Y. Dec. 11, 2019) ("The reasonableness of a restraint on future employment is an 'intensely fact-based test' that must be determined by looking at all the relevant facts." (citation omitted) (New York law)).

Although Onward has not alleged that Mr. Noble acquired, used, or shared Onward's trade secret or confidential information following his departure from the company, the Court will also reserve judgment on Onward's unfair competition claim until further development of the factual record. *See BBAM Aircraft Mgmt., LP v. Babcock & Brown LLC*, No. 20-CV-1056-VLB, 2021 WL 4460258, at *7 (D. Conn. Sept. 29, 2021) (denying motion to dismiss common law unfair competition claim, where "Defendants' argument for why the state and common law unfair competition claim should be dismissed is dependent on the Court dismissing the federal, state, and common law trademark infringement claims," which the court had not dismissed).

With respect to Onward's breach of the implied covenant of good faith and fair dealing claim, however, Onward has not alleged in its Complaint that Mr. Noble breached the non-compete clause, shared trade secret or confidential information, or solicited Onward clients or employees in a manner giving rise to an inference of bad faith. *See Buckman v. People Express, Inc.*, 205 Conn. 166, 171 (1987) ("Bad faith . . . generally impl[ies] a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not

prompted by an honest mistake as to one's rights or duties." (internal alteration, citation, and quotation marks omitted)). Because, as discussed above, Onward alleges only in conclusory terms that Mr. Noble acted in bad faith, this count will be dismissed. *See Calzone v. State Farm Fire & Cas. Co.*, No. 3:17-CV-00518 (MPS), 2017 WL 5013234, at *2 (D. Conn. Nov. 2, 2017) (dismissing implied covenant of good faith and fair dealing claim because "[w]hile Plaintiff uses the watchwords of bad faith in his complaint, he does not provide the requisite facts to 'nudge [his] claim[ ] across the line from conceivable to plausible.'" (quoting *In re Fosamax Prods. Liab. Litig.*, No. 09-CV-1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010))).

Accordingly, the Court will dismiss Onward's implied covenant of good faith and fair dealing claim, but Mr. Noble's motion to dismiss the remaining claims will be denied.

## IV. CONCLUSION

For the foregoing reasons, Onward's motion for a temporary restraining order and preliminary injunction is **DENIED**, and motion for expedited discovery is **DENIED as moot**.

Mr. Noble's motion to dismiss for lack of personal jurisdiction and failure to state a claim is **GRANTED in part** and **DENIED in part**. The implied covenant of good faith and fair dealing claim will be dismissed, without prejudice to seeking leave to amend the operative Complaint, but all other claims will remain.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of July, 2022.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE